UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROAD BROOK VENTURES LLC,<br><br>                           Plaintiff,<br><br>-vs-<br><br>DW RUSSELL LLC D/B/A PACIFIC REEF<br>SPEARFISHING,<br><br>                   Defendant. | **Index No.**<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Broad Brook Ventures LLC, by and through its undersigned counsel, Mestechkin Law Group P.C., as and for its Verified Complaint against Defendant DW Russell LLC d/b/a Pacific Reef Spearfishing, hereby alleges as follows:

## NATURE OF ACTION

1.     This is an action for copyright infringement by Plaintiff, a designer and seller of consumer goods for educational and entertainment purposes on the Amazon online marketplace, against a Defendant merchant for copying and selling on Amazon and other online stores such as Walmart and eBay, one of Plaintiff's best-selling items, namely a whistle such as those used by the ancient Aztecs that was uniquely designed by Plaintiff's own imagination and creativity.

2.     Plaintiff conducted a good deal of research to develop its whistle and spent nearly a year with its team designing the look and function of the whistle, including a distinct whistle sound that replicates what Plaintiff believed would have sounded if used by ancient cultures. The idea was to create a product that could bring people together through laughter and shared experiences and inspire people through culturally inspired, but entirely unique designs.

3.     Based on these design choices, Plaintiff created various versions of its whistle over a year before arriving at its eventual design. Plaintiff then registered a copyright for that design

1

before marketing and selling its design on Amazon beginning in February of 2022. A true and correct copy of Plaintiff's copyright is attached hereto as **Exhibit A**.

4.      Sales of the whistle were a huge success, as Plaintiff sold thousands of its whistles on Amazon, resulting in over one million dollars in revenue.

5.      However, that success quickly attracted copycat companies and individuals seeking to profit from Plaintiff's work by selling cheap unauthorized imitations of Plaintiff's whistles at much lower prices, resulting in financial, economic, and reputational harm to Plaintiff.

6.      The Defendant here is, by far, the most prolific infringer of Plaintiff's design, not only selling thousands of whistles that are direct copies of Plaintiff's whistle but selling other whistles with slight alterations that still trade upon Plaintiff's original designs, but which serve only to take more sales away from Plaintiff and to cheapen the value of Plaintiff's whistles.

7.      As a result of these actions, Plaintiff has no choice but to bring claims for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 501, and for common law unfair competition, seeking both monetary damages and injunctive relief in order to protect its business.

## PARTIES

8.      Plaintiff Broad Brook Ventures LLC is a Washington State Limited Liability Company with a principal place of business at 522 W Riverside Ave #6252 Spokane, WA, 99201. Plaintiff is registered with the New York State Secretary of State to transact business in the State of New York. Plaintiff operates a storefront on Amazon called "Arkaeology".

9.      Defendant DW Russell LLC d/b/a Pacific Reef Spearfishing is a Florida Limited Liability Company with a registered business address at 62 Gulf Breeze Pkwy Suite 165, Gulf Breeze, Florida, 32561. Defendant also operates an online store on the Amazon marketplace.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiff's copyright infringement claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patent, trademark, and copyright) and Plaintiff's common law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

11.     This Court has personal jurisdiction over Defendant under New York Civil Practice Law and Rules § 302 because Defendant markets, sells, offers to sell, and ships its infringing goods to residents of New York through its online store on Amazon.com.

12.     Plaintiff confirmed Defendant's contacts with New York in November 2024 by having one of its agents (1) make a purchase from a New York address of Defendant's goods on Amazon, (2) request that those goods be shipped to an address in New York, and (3) then physically accept those purchased goods at that address in New York.[1]

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 for the same reasons that personal jurisdiction over Defendant in New York is proper.

## STATEMENT OF FACTS

14.     Plaintiff began its business in 2020 with the idea of creating an online store that would offer unique merchandise inspired by historical and cultural artifacts. The concept behind the company was to offer consumer goods that could bring people together, bring them some joy, and educate them about other cultures.

15.     To that end, Plaintiff named its Amazon store ARKAEOLOGY®, to draw upon, and refer to, the study of ancient cultures from which Plaintiff's goods would be based.

16.     Starting in July 2020, Plaintiff's founders decided to create a consumer product

---

[1] Attached as **Exhibit B** are true and correct copies of Plaintiff's purchase receipt for one of Defendant's infringing goods showing a New York address, the shipping package in which the product was shipped showing a New York address, and the UPC Code for the box in which Defendant's whistle was shipped.

based on a death and war whistle, after taking a trip to Mexico and touring the rich Aztec historical sites in that country.

17.     Many different cultures throughout history have used war whistles, ostensibly to motivate their own soldiers during war and to intimidate opposing soldiers.

18.     Throughout history, death and war whistles have come in different shapes and sizes. For example, ancient Greek and Roman cultures used more tubular designs.



| Ancient Roman | Ancient Greek |

19.     However, in part because their whistles were also used in religious ceremonies, the ancient Aztecs made whistles that resembled skulls.



20.     The first such whistles were discovered in 1999, found in the hands of the skeleton of a sacrificed 20-year-old man who was buried centuries ago in front of the Ehecatl (wind) temple of Tlatelolco in Mexico City, Mexico.[2]

---

[2] https://www.mexicolore.co.uk/aztecs/music/death-whistle

21.    Because the Aztec war/death whistles had an interesting cultural history, Plaintiff decided to use Aztec war whistles as inspiration. However, Plaintiff was concerned that the Aztec whistles were not particularly attractive to modern consumers, in large part because Aztec whistles were never designed for entertainment or decorative purposes.

22.    Thus, Plaintiff decided that it wanted to design its own whistle that was inspired by the Aztecs, but which would add more appealing design elements and could actually function as a whistle. In other words, Plaintiff's whistle would not simply be an attractive decorative artifact but would also be an instrument that members of a family could use and share for fun.

23.    As a result, Plaintiff decided that it would use a skull as a base for its whistle but not use an elongated skull. In place of the elongated skull, Plaintiff would add a flute appendage to the back of the skull and also add a headdress to the crown of the skull.

24.    The addition of the headdress would be used for multiple purposes, including to make the whistle more attractive to the modern consumer, to partially hide the flute from a frontal view, and to allow a consumer to better grip and hold the whistle while in use.

25.    However, these design decisions came with many challenges.

26.    First, the headdress and overall whistle had to look like it could have been used by ancient civilizations or that it came directly from an archeological excavation site. This required Plaintiff to do more historical research on headdresses and then to design various models of its headdress that were inspired by that research.

  

27.     However, the headdress could not be too big, or too small, in relation to the skull so as to appear warped or disproportional. For example, here are some of the headdress designs that were developed but ultimately rejected by the Plaintiff based in part on proportionality.



28.     Further, the headdress could not be placed on the whistle such that it would interfere with the function of the whistle, so Plaintiff had to experiment with both the circumference of the headdress and its placement on the base of the skull relative to the position of the flute.

29.     Plaintiff also had to make sure that the dimensions of the headdress (as well as thickness) would be sturdy enough to have structural integrity but also not be too large in relation to the skull portion to possibly create too large of a shear force at the headdress-skull juncture.

30.     Plaintiff also had to make headdress designs that were ergonomic enough for repeated use by people because, indeed, this whistle was intended very much for social interaction.



31.     In addition, Plaintiff had to also factor in the added weight of the headdress as this would affect shipping costs and thus the viability of the product. Weight was a function both of the design of the whistle and of the materials used.

32.    Finally, the whistle, as a whole, had to look authentic, and so appearance, color, texture, and size had to be considered before deciding on a final mock because, again, Plaintiff wanted the whistle to look like it could have been used by the Aztecs or that it came directly from an archeological excavation site. Below is a rough early evolution of Plaintiff's whistle.

| Early Evolution of Plaintiff's Whistle |
| :---: |



33.    Plaintiff then held informal focus groups to determine whether the final design would sell in the marketplace.

34.    In all, Plaintiff designed nearly *ten* models, and the entire process took almost ten months before Plaintiff arrived at the final design, various images of which are depicted below.

| Plaintiff's Copyrighted Aztec Death / War Whistles |
|---|



35.    Plaintiff then registered a copyright for this design, titled "Aztec Skull Sculpture Warrior Black", on April 27, 2022, with a first publication date in the United States of February 15, 2022. A true and correct copy of Plaintiff's registration for this design, assigned Reg. No. VA 2-297-262 (hereinafter, "Aztec Whistle Copyright"), is attached hereto as Exhibit A.

36.    Plaintiff then started selling its designs on Amazon beginning on February 15, 2022. In preparation for launch, Plaintiff created a store with the name ARKAEOLOGY®, to draw upon and refer to the study of ancient cultures from which Plaintiff's artifacts were inspired.

37.    After launch, due in large part to the uniqueness of the designs, the cultural history behind the designs, and the extensiveness of Plaintiff's marketing, Plaintiff's sales were very successful. For example, since Plaintiff first started selling its death whistles in February 2022, Plaintiff has sold approximately 28,000 whistles, generating over $1 million in sales.

38.    During this same period of time, based on internet searches on sellers such as

Amazon, Walmart, eBay and Etsy, there were very few war whistles available in the market and even fewer based on Aztec artifacts. As a result, Plaintiff's Aztec death/war whistles easily comprised a majority of the market.

39.    Unfortunately for Plaintiff however, its success drew the immediate attention of copycats hoping to capitalize on the success and goodwill that Plaintiff had developed from its Aztec death/war whistles.

40.    Defendant DW Russell LLC operates an internet store on Amazon called Pacific Reef Spearfishing. Prior to Plaintiff's launch of its Aztec death whistles, DW Russell, as its store name "Pacific Reef Spearfishing" implies, sold primarily spearfishing guns, snorkeling and diving equipment. Defendant had never sold any Aztec death whistles, or any cultural artifacts for that matter, on its Amazon store.

41.    Moreover, Defendant's non-Amazon website, www.pacificspearfishing.com, also exclusively sells spearfishing and diving equipment, and does not sell any cultural artifacts, much less Aztec death whistles.

42.    Nonetheless, almost immediately after Plaintiff's sales of Aztec death whistles became popular, Pacific Reef Spearfishing, seemingly out of nowhere, without permission from Plaintiff, and in conspicuous contrast with its own branding geared towards spearfishing, snorkeling and diving, started selling Aztec death whistles on its Amazon site at https://www.amazon.com/s?srs=121155671011 in July 2024 – more than two years after Plaintiff first started selling its death whistles on Amazon in February 2022. The below web capture of Defendant's Amazon store was accessed on December 22, 2024.[3]

---

[3] Defendant was also selling this same whistle on Walmart.com. A true and correct copy of Defendant's Walmart webpage showing this whistle as accessed on November 16, 2024 is attached as Exhibit D.



43.    Clearly, as an Amazon merchant, Defendant had seen Plaintiff's Aztec death/war whistles on Plaintiff's Amazon store, saw how popular they were and how many sales Plaintiff was making, and decided it wanted a piece of that market regardless of whether it was consistent with its own branding.

44.    Plaintiff purchased two of Defendant's whistles from Amazon to make sure that Defendant had not simply copied Plaintiff's photos but was, indeed, copying Plaintiff's whistles.

45.    As can be seen in the comparisons below, Defendant's "Original Aztec Death Whistle" (**ASIN No. B0DB58ZRD6**) is an identical copy of Plaintiff's copyrighted whistle, down to the size of the whistle, its black color, the shape of the skull, the shape of the recessed eye sockets, the shape of the headdress and the feathering details of the headdress.

| Infringement Analysis Defendant's (Left) *versus* Plaintiff's (Right) |
|---|



46.     Given the extensive development that Plaintiff undertook to design its copyrighted whistle as described above, and the absence of any similar designs in history, it is virtually impossible for Defendant to have conceived of its infringing design independently.

47.     There are no differences whatsoever, except the price charged by Defendant, which

is about $10 less expensive than Plaintiff's identical death/war whistle and which thus diverted thousands of sales away from Plaintiff's whistles due to its lower pricing during this period of high inflation in the United States.

48.    Similarly, Defendant's "The Chief" death whistle (**ASIN No. B0DHGGQDW9**) is substantially similar to Plaintiff's Aztec Whistle Copyright with only slight alterations to the circumference of the headdress and the row of teeth on the skull.



**Infringement Analysis Defendant's (Left) *versus* Plaintiff's (Right)**

49.    However, these minor alterations hardly distinguish this design from Plaintiff's Aztec Whistle Copyright because the size, color, texture, flute shape, skull shape, and arrangement of the headdress in relation to the skull and the flute are all identical to Plaintiff's copyrighted design, and thus Defendant's "The Chief" whistle constitutes at least an unauthorized derivative work, if not a substantially similar copy.[4]

50.    The impact of Defendant's infringement has been drastic. Based on the approximate "Bought in the Last Month" sales figures for Defendant's "Original Aztec Death Whistle" that are available on Defendant's Amazon webpage for that item, Defendant has sold approximately one thousand or more of its copycat "Original Aztec Death Whistles" every month since it started selling in July 2024. This means that through December 2024, Defendant has potentially deprived Plaintiff of the sale of at least 6000 death whistles, which, assuming Plaintiff's sales price of $36 per whistle, is at least approximately **$216,000 in lost sales**. And this is not to mention the impact from the sales of Defendant's other "The Chief" death whistle. These are sales that Plaintiff should have made but for Defendant's blatant infringement.

51.    The diversion of sales has also impacted Plaintiff by increasing the costs expended by Plaintiff, which has had to spend more money advertising on Amazon to try to increase sales to make up for the sales lost to the Defendant.

52.    These diverted sales should have allowed Plaintiff to grow its business, expand the size of its market share, and maintain its prominent position as the leader in that marketplace, allowing it to further develop its brand as a provider of historical and cultural artifacts for entertainment and educational purposes.

---

[4] Defendant also sells this whistle on eBay. A true and correct copy of Defendant's listing of this whistle on eBay, as accessed on January 28, 2025, is attached hereto as Exhibit E.

53.     Plaintiff's Aztec whistles were intended to be the anchor product from and around which Plaintiff's business was to develop. The plan was to develop other such artifacts that had cultural, historical and educational value and through the marketing and sales of those products develop a unique and thriving business. Those plans are now in jeopardy due to the wholesale infringement by Defendant and other infringers.

54.     Further, because Defendant's infringing whistles look identical or substantially similar to Plaintiff's whistles, there is now a high likelihood of confusion in the marketplace as to the source of Plaintiff's whistles. Anyone searching for "Aztec death whistles" on Amazon will find search results that contain both Plaintiff's and Defendant's identical whistles, such that a consumer will have no way of distinguishing the source of those goods. A true and correct copy of the search results from Amazon for "Aztec Death Whistle" showing both Defendant's and Plaintiff's products in September 2024 and January 2025 is attached as Exhibit C.

55.     As a result, Plaintiff is no longer in control of its own reputation because any criticisms or complaints that the public has of Defendant and its goods will necessarily impact Plaintiff's reputation, especially since Plaintiff has no connection with Defendant or its products and can do nothing to address any complaints directed at Defendant.

56.     For example, the following negative comments were left by customers as of January 27, 2025 on Defendant's The Chief Death whistle seller's page.[5]

---

[5] The following video-captures were taken from the Defendant's Amazon seller's page for it's the Chief death whistles (https://www.amazon.com/LOUDEST-Whistle-Screaming-Halloween-Midnight/product-reviews/B0DHGGQDW9/ref=cm_cr_arp_d_viewopt_sr?ie=UTF8&reviewerType=all_reviews&filterByStar=critical&pageNumber=1 ) as accessed on January 28, 2025.

 Customer Review

★★★☆☆  **Mine is not really loud and doesn't sound like screaming.**
Reviewed in the United States on November 4, 2024
Color: Midnight Black  |  **Amazon Vine Customer Review of Free Product** ( What's this? )

As far as a death whistle goes, this whistle isn't really much of one. It comes in a very nice box, comes with a bag to help keep it safe, and looks impressive. However the sound is really lacking. I have to blow very hard to get it anywhere near loud sounding, and it makes more of a discordant whistle, rather than sounding like a scream. This sounds more like a spots whistle with laryngitis.

I am just not impressed with it's sound or performance.



One person found this helpful

( Helpful )  |  Report

 Amazon Customer

★★☆☆☆  **Breaks easily**
Reviewed in the United States on December 27, 2024
Color: Midnight Black  |  **Verified Purchase**

Very fragile

( Helpful )  |  Report

 Neil P.

★★★☆☆  **Okay Whistle but Not as loud as stated**
Reviewed in the United States on November 8, 2024
Color: Midnight Black  |  **Amazon Vine Customer Review of Free Product** ( What's this? )

This is a good conversation piece and looks nice it is not as loud as it states. I followed the instructions and tried everything and it would get loud but not what is stated. Whistle is good looking piece that has a nice finish on it and is easy to hold in your hand. Like the look of the Aztec Chief and it does get second looks. Mouth piece is okay and comfortable.

( Helpful )  |  Report

 meemaw

★★★☆☆  **Very interesting but not as loud as I expected**
Reviewed in the United States on October 17, 2024
Color: Midnight Black  |  **Amazon Vine Customer Review of Free Product** ( What's this? )

This Aztec death whistle is very interesting. It's kind of a cool ugly looking thing that's smooth and shiny. It comes with a nice storage bag keep it in. As far as the whistle goes, it's not nearly as loud as I expected it would be and I don't think it really sounds like a woman screaming. You really have to blow hard to make a shrill sound but it just does not sound like a scream to me. I was hoping for something that would really scare someone but this just isn't it. It does make noise and it is mysterious sounding just not what I was expecting. I don't know, maybe it's just me they can't get it to sound scary. Maybe someone who can blow harder can get her to scream. It is really cool looking and a good conversation piece.

57.    Lastly, Defendant's actions are clearly willful, based on their prior history of copying the products of others. For example, Defendant also sells another whistle on its store, which was copied from another merchant called the "Handmade Store".

| Original The Homemade Store[6] | Defendant's Copy[7] |
| --- | --- |
|  | |

58.    The Amazon webpages for these two items (available at Notes 2, 3) indicate that the Homemade store first sold this item on January 14, 2019, while Defendant's page indicates that Defendant began selling copies of the same item on October 8, 2024. Thus, Defendant has a pattern of looking at what sells well for its competitors and then simply copying those designs for its own benefit, and without respect for the intellectual property rights of others

59.    For these reasons, Plaintiff requests that the Court immediately enjoin Defendant from selling its infringing death whistles, order Defendant to provide an accounting of its revenues from the sale of its infringing whistles, order Defendant to disgorge all revenues realized from the sale of its infringing whistles and grant such other and further relief as is just and proper.

---

[6] As accessed from https://www.amazon.com/Aztec-Death-Whistles-Whistle-Carnivore/dp/B07MK3MK2R/ref=dp_prsubs_d_sccl_3/140-2907744-8909929?pd_rd_w=4lpFk&content-id=amzn1.sym.42aa4ac9-41cf-40f2-844a-256751b93dbf&pf_rd_p=42aa4ac9-41cf-40f2-844a-256751b93dbf&pf_rd_r=PYP4KXF98SE80NJTK6M6&pd_rd_wg=49js8&pd_rd_r=05db6834-3cdd-4e2b-9873-fe27c97de5d0&pd_rd_i=B07MK3MK2R&psc=1 on January 27, 2025.

[7] As accessed from https://www.amazon.com/Jackal-Canine-Skull-Loudest-Whistle/dp/B0DJNVD9YW/ref=sr_1_2?dib=eyJ2IjoiMSJ9.hWJAPOkciAI92kdqYvU16c7dC3vuqLYDIFXd_ZDVfCUEhLAO17EOe5vMyD700rdXKYoxPj3EWG3OuzO4Ybu06HqZtWRb9JmSLC21dpQlQjU9_DEPA3CunildAffTxRzKkGhC21MBPcwmtkdVJKn6tw.jtpWZIXelyEGKatpubPcjl-9fam6jD9DdLKYFT3Kg-o&dib_tag=se&qid=1738017954&sr=8-2&srs=121155671011 on January 27, 2025.

**FIRST CAUSE OF ACTION**
**(Copyright Infringement, 17 U.S.C. § 501)**

60.    Plaintiff repeats and realleges each of the allegations of the foregoing paragraphs as if fully set forth herein.

61.    Plaintiff is the sole owner of all right, title, and interest in and to Plaintiff's Aztec Whistle Copyright.

62.    Pursuant to 17 U.S.C. § 106, Plaintiff has the exclusive rights to copy, reproduce, distribute, publicly display, and prepare derivative works based on Plaintiff's Aztec Whistle Copyright.

63.    Defendant has unlawfully copied, reproduced, distributed Plaintiff's Aztec Whistle Copyright which are protected and covered by Plaintiff's Aztec Whistle Copyright registrations.

64.    Plaintiff has never authorized Defendant, by license or otherwise, to duplicate, distribute, or in any other way utilize the Plaintiff Copyrights.

65.    Defendant's acts constitute infringement of the exclusive rights afforded to Plaintiff under 17 U.S.C. § 106 and by virtue of Plaintiff's copyright registrations.

66.    Defendant has committed all the acts alleged herein deliberately, willfully, and with reckless disregard for Plaintiff's rights.

67.    Defendant has continued to infringe Plaintiff's Aztec Whistle Copyright and unless permanently enjoined by order of this Court, will continue to infringe Plaintiff's Aztec Whistle Copyright, all to Plaintiff's irreparable injury and detriment leaving Plaintiff without an adequate remedy at law.

68.    Plaintiff is entitled to actual damages and Defendant's profits attributable to their infringement of Plaintiff's Aztec Whistle Copyright or, at Plaintiff's election, pursuant to 17 U.S.C. § 504(c), statutory damages for Defendant's willful copyright infringement of no less than

$150,000 per work.

### SECOND COUNT FOR RELIEF
**(Unfair Competition under New York Law)**

69.     Plaintiff repeats and realleges each of the allegations of the foregoing paragraphs as if fully set forth herein.

70.     Defendant has misappropriated the labors and expenditures of Plaintiff in the manner described above, including but not limited to, infringing Plaintiff's Aztec Whistle Copyright and profiting from the goodwill that Plaintiff spent years developing, through the sales and offers to sell its infringing whistles throughout the United States.

71.     Given the manner by which Defendant undeniably obtained access to Plaintiff's Aztec Whistle Copyright and its studious copying of Plaintiff's Aztec Whistle Copyright, Defendant's conduct was done willfully and in bad faith.

72.     As a result of Defendant's actions, Plaintiff is losing profits from lost sales, suffering a loss of enormous goodwill and market share, and will continue to suffer such loss if Defendant is allowed to continue its illegal activity.

73.     As a result of Defendant's conduct, Plaintiff is entitled to damages in an amount equal to three times Plaintiff's damages and/or Defendant's profits and reasonable attorneys' fees and costs.

74.     In addition, Plaintiff has no adequate remedy at law for Defendant's ongoing wrongful conduct. Plaintiff has been, and absent injunctive relief will continue to be, irreparably harmed by Defendant's actions.

75.     Unless Defendant's unlawful actions as alleged herein are immediately enjoined, Defendant will continue to cause damage to Plaintiff and its trademark and Plaintiff will continue to suffer irreparable harm and injury.

## JURY DEMAND

76.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A.     That the Court find that Defendant has infringed Plaintiff's Aztec Whistle Copyright;

B.     That Defendant, its directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be permanently enjoined from directly or indirectly infringing Plaintiff's Aztec Whistle Copyright;

C.     That Defendant shut down/disable/remove any Amazon.com, Walmart, eBay or other internet stores, webpages owned, or operated by, Defendant that advertise, sell or offer to sell products that infringe Plaintiff's Copyright;

D.     That at Plaintiff's election, if so made, judgment be entered for Plaintiff and against Defendant under 17 U.S. Code § 504 for Plaintiff's actual damages according to proof, or for any of Defendant's profits attributable to infringements of Plaintiff's Aztec Whistle Copyright in accordance with proof, or for statutory damages;

E.     That Defendant be required to account for all of their gains, profits, and advantages derived from Defendant's acts of infringement and for their other violations of law alleged herein;

F.     That all gains, profits, and advantages derived by Defendant from their acts of infringement and other violations of law alleged herein be deemed to be held in constructive trust for the benefit of Plaintiff;

G.     That Plaintiff have judgment against Defendant for Plaintiff's costs and attorneys'

fees;

       H.     That the Court grant such other and further relief as the Court deems just and proper

under the circumstances.

Dated:      Brooklyn, New York         Respectfully submitted,
           January 30, 2025

                                         */s/ Oleg A. Mestechkin*
                                         Oleg A. Mestechkin, Esq.
                                         Wing K. Chiu, Esq.
                                         **MESTECHKIN LAW GROUP P.C.**
                                         2218 Ocean Avenue, Brooklyn, NY 11229
                                         Tel. (212) 256-1113
                                         Fax. (646) 365-2069
                                         om@lawmlg.com
                                         wkc@lawmlg.com

                                         *Attorneys for Plaintiff Broad Brook Ventures*
                                         *LLC*

## VERIFICATION

I, Arieh Hammer, am over the age of 18 and am a Principal of Plaintiff, Broad Brook Ventures LLC, in this action. I have reviewed the allegations of the Verified Complaint in this action and the documents annexed thereto, and attest that the allegations set forth in the Verified Complaint are true and correct based on my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would do so competently.

I declare under the penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on this 30th day of January 2025.

_____
**ARIEH HAMMER**